UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

COLONIAL SURETY COMPANY,

                     Plaintiff,

-against-

A&R CAPITAL ASSOCIATES, A&R
DEVELOPERS CORP., and REZA SHAIBANI,

                     Defendants.
-------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
13-CV-7214 (LDH) (ARL)

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Colonial Surety Company brings this action to enforce an indemnity agreement executed between Plaintiff and Defendants A&R Capital Associates, A&R Developers Corp., and Reza Shaibani. Plaintiff also seeks indemnification under the common law. Plaintiff moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment.

## UNDISPUTED FACTS[1]

      On or about November 10, 2010, Defendants, as indemnitors, executed and delivered a General Indemnity Agreement (the "Indemnity Agreement") in favor of Plaintiff, as indemnitee. (Defs.' 56.1 Statement ¶ 1, ECF No. 27-15; Nunziata Aff. Ex. A, at 1, ECF No. 27-3.) Pursuant to the terms of the Indemnity Agreement, Defendants agreed to indemnify and hold harmless Plaintiff from and against all losses, costs, and expenses, including attorney's fees, incurred in connection with (a) Plaintiff's issuance of bonds on behalf of Defendant A&R Capital, and/or (b) Plaintiff's enforcement of the Indemnity Agreement. (Defs.' 56.1 Statement ¶ 2.)

      Following the parties' execution of the Indemnity Agreement, the New York State Office

---

[1] The following facts are undisputed unless otherwise noted.

of Parks (the "NYSOP") awarded a contract (the "Sylvan Road Contract") to Defendant A&R Capital in connection with a project known as "Calcium Chloride Concrete Repairs on Sylvan Road Phase 2" (the "Sylvan Road Project"). (*Id.* ¶ 3.) On or about May 23, 2012, Plaintiff, as surety, on behalf of Defendant A&R Capital, as principal, issued a performance bond and payment bond (collectively, the "Sylvan Road Bond") in favor of the NYSOP, as obligee, in connection with the Sylvan Road Contract. (*Id.* ¶ 4.)

Following the execution of the Indemnity Agreement, the Village of Valley Stream ("Valley Stream") awarded a contract (the "Valley Stream Contract") to Defendant A&R Capital in connection with a project known as the "2011 Nassau County Environmental Bond Act Storm Water Quality Improvements at Hendrickson Park Pond and Village Green" (the "Valley Stream Project"). (*Id.* ¶ 5.) In connection with the Valley Stream Contract, on or about May 29, 2012, Plaintiff, as surety on behalf of Defendant A&R Capital, as principal, issued a performance bond and a payment bond (collectively, the "Valley Stream Bond") in favor of Valley Stream, as obligee. (*Id.* ¶ 6.)

On or about February 18, 2013, LandSite Development/Westbury Fence Co. ("LandSite") submitted a claim against the Valley Stream Bond in the amount of $109,909.10, seeking compensation for work performed and/or materials allegedly supplied to the Valley Stream Project. (*Id.* ¶ 7.) LandSite then proceeded to file, on or about April 12, 2013, a Notice under Mechanic's Lien Law for Account of Public Improvements in the amount of $259,827.96 (the "LandSite Lien") in connection with the Valley Stream Project. (*Id.* ¶ 8.) At the request of Defendants, on or about July 9, 2013, Plaintiff, as surety, on behalf of Defendant A&R Capital, as principal, issued a $285,810.76 lien discharge bond (the "LandSite Lien Bond") in connection with the LandSite Lien. (*Id.* ¶ 9.) Plaintiff also received additional claims under the Sylvan

2

Road Bond and Valley Stream Bond (collectively, the "Bonds") from some of Defendant A&R Capital's subcontractors and/or suppliers. (*Id.* ¶ 10.)

On September 9, 2013, Valley Stream terminated Defendant A&R Capital on the Valley Stream Project and demanded that Plaintiff complete the Valley Stream Contract pursuant to the terms of the Valley Stream Bond. (*Id.* ¶ 11.) In May 2014, PSL Industries ("PSL") provided Plaintiff with a proposal to complete the Valley Stream Project for $636,557.50. (Pl.'s Reply 56.1 Statement ¶ 1, ECF No. 25; Shaibani Aff. Ex. 1, at 1, ECF No. 27-17.) PSL never completed the project, however. (Pl.'s Reply 56.1 Statement ¶ 2.) In fulfillment of its obligations under the Valley Stream Bond, Plaintiff entered into a Tender Agreement with Valley Stream and AGL Contracting ("AGL") on or about December 22, 2015, pursuant to which (a) AGL was retained as contractor to complete the Valley Stream Project for $841,445.88, and (b) Plaintiff paid to Valley Stream the sum of $481,416.78 under the Valley Stream Bond. (Defs.' 56.1 Statement ¶ 12; Pl.'s Reply 56.1 Statement ¶ 3; Shaibani Aff. Ex. 2, at 10, ECF No. 27-18.) Plaintiff is also a defendant in a state action brought by LandSite, wherein LandSite seeks to foreclose on the LandSite Lien and recover under the LandSite Lien Bond. (Defs.' 56.1 Statement ¶ 13.)

Plaintiff claims, though Defendants dispute, that Plaintiff has incurred losses, costs, and expenses in an amount not less than $650,025.86, in connection with the Bonds, the LandSite Lien Bond, and Plaintiff's enforcement of the Indemnity Agreement.[2] (*Id.* ¶ 14.) Defendants do not dispute that they have failed to indemnify and reimburse Plaintiff for its purported losses, costs, and expenses. (*Id.* ¶ 15.) Defendants also do not dispute that despite demand, they have

---

[2] As part of this larger amount, Plaintiff also claims specifically that it incurred total costs and expenses of $14,729.71 in connection with the Sylvan Road Project. (Pl.'s Reply 56.1 Statement ¶¶ 9-10.) Defendant disputes these allegations, claiming that Plaintiff did not pay out any monies or suffer any monetary damages with respect to the Sylvan Road Project. (*Id.*)

failed to deposit collateral security with Plaintiff in the sum of $259,827.96 in connection with the LandSite Lien. (*Id.* ¶ 17.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movants bear the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movants' claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movant meets that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The court is to view all such facts in the light most favorable to the non-movants, drawing all reasonable inferences in their favor. *Anderson*, 477 U.S. at 255. To survive summary judgment, non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment . . . 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial.").

Summary judgment is appropriate on contract claims when the "contractual language is

'plain and unambiguous.'" *Zurich Am. Ins. Co. v. ABM Indus.*, 397 F.3d 158, 164 (2d Cir. 2005). "Ambiguity exists when a contract is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citation and quotation marks omitted). "The determination of whether a contract term is ambiguous is a threshold question of law for the court." *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987).

## DISCUSSION

### I. Contractual Indemnification for Plaintiff's Losses, Costs, and Expenses

Pursuant to the terms of the Indemnity Agreement, Defendants agreed to indemnify and hold harmless Plaintiff from and against all losses, costs, and expenses incurred in connection with (a) Plaintiff's issuance of bonds on behalf of Defendant A&R Capital, and/or (b) Plaintiff's enforcement of the Indemnity Agreement. (Defs.' 56.1 Statement ¶ 2.) Specifically, Paragraph 3 of the Indemnity Agreement obliges Defendants to:

> [I]ndemnify and save harmless [Plaintiff] from and against any and all (i) demands, liabilities, losses, costs, damages or expenses of whatever nature or kind, including all fees of attorneys and all other expenses, including but not limited to costs and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of Bonds, enforcement of any Contract with [Defendants], and in attempting to recover losses or expenses from [Defendants], or third parties, whether or not [Plaintiff] shall have paid out any or all such claims, (ii) amounts sufficient to discharge any claim made against [Plaintiff] on any Bond, which amounts may be used by [Plaintiff] to pay such claim, or may be held by [Plaintiff] as collateral security against any loss on any Bond, and (iii) any premiums due on Bonds issued by the [Plaintiff] on behalf of the Principal.

(Nunziata Aff. Ex. A ¶ 3.) Further, Paragraph 4(D) of the Indemnity Agreement (the "Prima Facie Clause") specifies that "[i]n any claim or suit hereunder, an itemized statement of the aforesaid loss and expenses, sworn by an officer of [Plaintiff], or the vouchers or other evidence

5

of disbursement by [Plaintiff], shall be prima facie evidence of the fact and extent of the liability hereunder of [Defendants]." (Nunziata Aff. Ex. A ¶ 4(D).)

Plaintiff claims that it has made a prima facie showing entitling it to indemnification in the sum of $650,025.86 by submitting to this Court an itemized statement of its costs and expenses. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 27-12; Nunziata Aff. ¶¶ 28-29; *id.* Ex. I, ECF No. 27-11.) As such, Plaintiff maintains that it is entitled to summary judgment on this claim. (Pl.'s Mem. 9.) The Court disagrees. An examination of the itemized statement reveals that Plaintiff has not, in fact, satisfied the requirements necessary to make a prima facie showing.

Under the terms of the Indemnity Agreement, only an itemized list "sworn to by an officer" will suffice as prima facie evidence of the extent of liability. (Nunziata Aff. Ex. A ¶ 4(D).) The itemized statement in this case was submitted as an exhibit to the sworn affidavit of Wayne Nunziata, the President of Colonial Surety Company. (*See* Nunziata Aff. Ex. I.) Although the affidavit was sworn to by Mr. Nunziata, the itemized statement itself was not. (*See* Nunziata Aff. 28-29; *id.* Ex. I.) In other words, no officer of the company has declared under oath that the itemized amounts are true and accurate. Plaintiff alternatively could have made a prima facie showing by submitting "vouchers or other evidence of disbursement." (Nunziata Aff. Ex. A ¶ 4(D).) It did not. Instead, Plaintiff rests its entire argument on an unsworn list, which is deficient on its face. For this reason, there exists a triable issue of fact as to the extent of Defendant's liability, and Plaintiff's motion for indemnification in the amount of $650,025.86 is, therefore, denied.[3]

---

[3] With regard to Defendants' specific claim that Plaintiff did not pay out any monies or suffer any monetary damages in connection with the Sylvan Road Project (*see* Pl.'s Reply 56.1 Statement ¶¶ 9-10), Plaintiff again points to the itemized statement attached to the Nunziata affidavit to prove an alleged $14,729.71 in losses (*id.*). This amount thus appears to be a portion of the larger $650,025.86 in total losses claimed by Plaintiff. Accordingly, the

6

Notwithstanding the infirmities in Plaintiff's argument, the Court is compelled to note that it is not persuaded by Defendants' arguments regarding the unreasonableness of Plaintiff's alleged losses. Defendants are correct that as an exception to the general rule requiring indemnification for a surety upon establishment of its prima facie case, indemnification may not be required where the payment amount is unreasonable. *See Berkley Reg'l Ins. Co. v. Weir Bros.*, No. 13-cv-3227, 2013 WL 6020785, at *8 (S.D.N.Y. Nov. 6, 2013) ("Once a plaintiff meets its burden by establishing a prima facie case, in order to avoid summary judgment, a defendant must demonstrate the surety payments were in bad faith or for an unreasonable amount."); *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 12 A.D.3d 891, 892, 784 N.Y.S.2d 698, 700 (2004) (collecting cases and observing that "New York courts have held that . . . the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount . . ."). However, to avail themselves of this exception, Defendants must present actual evidence supporting their claim of unreasonableness. *See Berkley Reg'l Ins. Co.*, 2013 WL 6020785, at *11 ("[C]onclusory allegations of bad faith and unreasonableness are insufficient to avoid summary judgment."); *see also Prestige Decorating & Wallcovering, Inc. v. U.S. Fire Ins. Co.*, 858 N.Y.S.2d 1, 2 (1st Dep't 2008) (holding that defendant's "conclusory affidavits" failed to raise a triable issue of fact as to either the bona fides of the payment or the reasonableness of the amount of plaintiff's losses and expenses).

Here, Defendants maintain that the expenses sought by Plaintiff are impermissibly inflated. In support of that contention, Defendants highlight the difference between PSL's $636,557.50 October 2014 proposal to complete the Valley Stream Project and the $841,445.88 that Plaintiff ultimately paid AGL in December 2015. (Defs.' Opp'n 3, ECF No. 27-19.)

---

Court's ruling with respect to the larger amount applies equally to Plaintiff's alleged losses suffered in connection with the Sylvan Road Project.

7

According to Defendants, it was Plaintiff's two-year delay in selecting a contractor to complete the project following Valley Stream's demand upon Plaintiff that resulted in the significantly increased completion costs. (*Id.*) Defendants further assert that one month before Valley Stream terminated Defendant A&R Capital, Defendants received proposals from various subcontractors to complete the project for less than the $360,000 balance remaining on the contract. (*Id.*; Shaibani Aff. ¶ 4.)

Defendants' argument amounts to little more than conjecture. They have proffered no evidence that another contractor could see the project through to completion at a lesser cost. *See Acstar Ins. Co. v. Teton Enterprises, Inc.*, 248 A.D.2d 654, 655, 670 N.Y.S.2d 588, 589 (2d Dep't 1998) (holding that indemnitors' unsupported assertion that another contractor would have completed the remaining work for less than surety paid was "speculative and conclusory"). Similarly, Defendants have proffered no evidence that any delay in selecting a new contractor was undue and resulting from conduct on the part of Plaintiff.[4] At bottom, conclusory and unsupported claims like the sort proffered by Defendants are simply insufficient to overcome an otherwise supported claim for indemnification. *See Hartford Fire Ins. Co. v. Macase Contracting Corp.*, No. 94-cv-5721, 1997 WL 7675, at *2 (S.D.N.Y. Jan. 9, 1997) (holding that indemnitors' assertions that surety's four-month delay in engaging a completion contractor were "irrelevant," as surety clearly established that indemnitors were liable for surety's payments under the indemnity agreement).[5]

---

[4] Moreover, it appears from the December 22, 2015 Tender Agreement that the selection of a replacement contractor required the consent of Valley Stream. (*See* Nunziata Aff. Ex. G, at 1, ECF No. 27-9 ("WHEREAS, Surety has procured and *Owner hereby accepts* Tender Contractor to perform the balance of the Contract . . . .") (emphasis added).) Thus, any delay in the selection of a contractor could have resulted plausibly from the time required to obtain consent from Valley Stream.

[5] Furthermore, Defendants' admission that Plaintiff "accepted" the less costly PSL proposal on October 5, 2014, (*see* Defs.' Opp'n 3), undercuts their argument that Plaintiff drove up the costs of completing the project by unreasonably delaying its completion.

## II. Premium Due on the LandSite Lien Bond

Plaintiff also seeks summary judgment against Defendants on its claim for indemnification in the amount of $9,939.48 in connection with Defendants' alleged failure to pay premium on the LandSite Lien Bond. (Pl.'s Mem. 10.) Here again, Plaintiff has failed to make a prima face case showing that the Indemnity Agreement entitles it to recovery in this amount. At most, Plaintiff has established, through the submission of an invoice, evidence of liability for $5,716.22. (*See* Nunziata Aff. Ex. E, ECF No. 27-7.) That said, Defendants do not oppose Plaintiff's motion on this ground. In other words, Defendants have conceded the point. *See Dunkin' Donuts Franchised Restaurants LLC v. Tim & Tab Donuts, Inc.*, No. 07-cv-3662, 2009 WL 2997382, at *9 (E.D.N.Y. Sept. 15, 2009) (citing *Taylor v. City of New York,* 269 F. Supp. 2d 68, 75 (E.D.N.Y.2003)) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (citing *Bombard v. Central Hudson Gas & Electric*, 205 A.D.2d 1018, 614 N.Y.S.2d 577, 580 (3d Dep't 1994)) ("The Court . . . notes that, under New York state law, the failure to provide argument on a point at issue constitutes abandonment of the issue."); *Pennymac, Corp. v. DiPrima*, 42 N.Y.S.3d 755, 762 (N.Y. Sup. Ct. 2016) ("Where a defendant fails to oppose some or all matters advanced on a motion for summary judgment, the facts as alleged in the movants' papers may be deemed admitted as there is, in effect, a concession that no question of fact exists."). Accordingly, Plaintiff's motion is granted as to the $9,939.48 owed by Defendants in connection with their failure to pay premium on the LandSite Lien Bond.

### III. Common Law Indemnification

Plaintiff maintains that, notwithstanding any contractual right to indemnification, it is entitled to indemnification under common law. (Pl.'s Mem. 14-15.) A surety's contractual right to indemnification does indeed coexist with its right to common law indemnification. *See U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-cv-3099, 2005 WL 289575, at *26 (S.D.N.Y. Feb. 4, 2005), *amended sub nom. U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-CV-3099, 2005 WL 736149 (S.D.N.Y. Mar. 29, 2005) (finding defendant liable, under the common law and by agreement, to indemnify sureties); *In re John's Insulation, Inc.*, 221 B.R. 683, 689 (Bankr. E.D.N.Y. 1998) (noting that "both the common law doctrine of reimbursement and the contractual provisions of the Indemnity Agreement give Hartford the right to seek recovery of its costs and expenses in completing the construction contract"); *Aetna Cas. & Sur. Co. v. Lumbermens Mut. Cas. Co.*, 136 A.D.2d 246, 248, 527 N.Y.S.2d 143, 144-45 (4th Dep't 1988) ("Nothing in this clause is inconsistent with the owner's right to common-law indemnity and there is no reason why the right to common-law indemnity and contractual indemnity should not co-exist."). That is, where payment by one person is compelled, which another should have made, a contract to reimburse or indemnify is implied by law. *See First Indem. of Am. Ins. Co. v. Shinas*, No. 03-cv-6634, 2009 WL 3154282, at *10 (S.D.N.Y. Sept. 30, 2009) (citing *McDermott v. City of New York,* 50 N.Y.2d 211, 216-17, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980)); *Westbank Contracting Inc. v. Rondout Valley Cent. Sch. Dist.,* 46 A.D.3d 1187, 1189, 847 N.Y.S.2d 780, 782 (3rd Dep't 2007). However, here again, to prevail on summary judgment, Plaintiff must establish that there is no genuine dispute as to the amount at issue. Plaintiff has failed to do so. Accordingly, the Court cannot grant Plaintiff's motion for

summary judgment for common-law indemnification in the amount of $650,025.86.

## IV. Contractual Entitlement to Collateral Security

Defendants' obligation under the Indemnity Agreement to provide Plaintiff with collateral security is explicit. Paragraph 7 of the Agreement provides:

> If a claim is made against [Plaintiff], or if [Plaintiff] deems it necessary to establish a reserve for potential claims, and upon demand from [Plaintiff], [Defendants] shall immediately deposit with [Plaintiff] cash or other property acceptable to [Plaintiff], as collateral security, to protect [Plaintiff] with respect to such claim or potential claims and any anticipated expense or attorney's fees. Such collateral security shall be in such amount as [Plaintiff] in its sole discretion deems appropriate. Such collateral may be held by [Plaintiff] until it has received satisfactory evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all losses, expenses and fees, and paid all premiums due.

(Nunziata Aff. Ex. A ¶ 7.)

Courts in New York have routinely upheld the validity of collateral security clauses and enforced their terms. *See, e.g.*, *American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302-03 (2d Cir. 1989) (reversing district court's dismissal of complaint and upholding collateral security provision where surety "had specifically bargained to have access to collateral security"); *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 922 (E.D.N.Y. 1999) (collecting cases and upholding collateral security clause where indemnity agreement "unambiguously require[d] [defendant] to post collateral security upon demand, when required to exonerate or indemnify [plaintiff]"); *American Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997) (finding defendant liable to plaintiff for collateral security where the language of the collateral security provision in the indemnity agreement was unambiguous, it was undisputed that plaintiff had received a demand against the bond executed on behalf of defendant, and defendant conceded that it had failed to place any collateral security with plaintiff); *BIB Constr. Co. v. Fireman's Ins. Co.,* 214 A.D.2d 521, 522-

23, 625 N.Y.S.2d 550, 552-53 (1st Dep't 1995) (upholding provision in indemnity agreement between defendant contractor and plaintiff surety under which defendant promised to furnish plaintiff with a cash reserve for pending litigation concerning a performance bond upon demand by plaintiff and in an amount established by plaintiff's "sole discretion"). Indeed, so long as "the amount demanded by a surety is reasonable and the transaction is 'at arm's length with relative equality of bargaining power,'" it will be enforced. *U.S. Fid. & Guar. Co.*, 62 F. Supp. 2d at 922 (quoting *BIB Constr. Co.*, 214 A.D.2d at 523, 625 N.Y.S.2d at 552). Where a defendant seeks to challenge the amount sought, it is the defendant's burden to establish that the costs and expenses were unreasonable or were incurred in bad faith. *Id.*

Here, LandSite submitted a claim against the Valley Stream Bond in the amount of $109,909.10. (Defs.' 56.1 Statement ¶ 7.) LandSite then filed the LandSite Lien in the amount of $259,827.96. (*Id.* ¶ 8.) As a result of LandSite's claims, Plaintiff demanded that Defendants deposit with Plaintiff collateral security in the amount of $521,933.86 "pursuant to the terms of the [Indemnity Agreement]." (Shaibani Aff. Ex. H, at 1, ECF No. 27-10.) Plaintiff now seeks an order compelling Defendants to deposit with Plaintiff collateral security in the amount of $259,827.96. (Pl.'s Mem. 12.)

Nothing in the record indicates that the amount of collateral security demanded by Plaintiff is unreasonable (it is equal to the amount of the LandSite Lien (*see* Defs.' 56.1 Statement ¶ 8)) or that the Indemnity Agreement was not negotiated at arm's length with relative equality of bargaining power. The Indemnity Agreement itself is clear as to Defendants' obligation to provide collateral security to Plaintiff and on Plaintiff's right to determine the amount of such security in its "sole discretion." (Nunziata Aff. Ex. A ¶ 7.) Accordingly, Plaintiff's motion for summary judgment as to the matter of collateral security is granted, and

Defendants are ordered to deposit with Plaintiff collateral security in the amount of $259,827.96.

## V. *Quia Timet* and Exoneration

Plaintiff maintains that it is entitled to summary judgment under the equitable doctrines of *quia timet* and exoneration. (Pl.'s Mem. 15-16.) Defendants argue in opposition that relief under these doctrines would be premature. (Defs.' Opp'n 5.) Defendants are correct only as to exoneration.

"*Quia timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 32 (2d Cir. 1991) (citing *New Orleans v. Gaines's Adm'r.*, 131 U.S. 191, 212 (1889)). "Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor." *Id.* (citing *Filner v. Shapiro*, 633 F.2d 139, 142 (2d Cir. 1980)). To recover under a theory of *quia timet* or exoneration, a surety must establish that: (1) the debt is presently due (exoneration) or will come due (*quia timet*); (2) the principal is or will be liable for the debt; and (3) absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor. *Id.* (citing *Admiral Oriental Line v. United States,* 86 F.2d 201, 204 (2d Cir. 1936)).

Plaintiff argues that it should be awarded *quia timet* relief because it is continuing to defend against the LandSite Lien and is subject to uncollateralized risk under the LandSite Lien Bond. (Pl.'s Mem. 16.) The Court finds it unnecessary to reach the question of Plaintiff's entitlement to *quia timet* relief given that Plaintiff's motion for summary judgment for contractual collateral security in the amount of $259,827.96 has been granted. Plaintiff further

13

argues that it is entitled to exoneration because Defendant A&R Capital is primarily obligated at common law to perform the obligations of the bonds issued by Plaintiff and because Plaintiff faces a "potential" loss of at least $259,827.96 in the pending LandSite Lien Action. (*Id.* at 17.) Because the Defendant A&R Capital's debt has not matured, exoneration would be inappropriate at this time. *See Borey*, 934 F.2d at 32-33 (noting that exoneration is a proper remedy only "after the principal's debt has matured").

## VI. Specific Performance to Inspect Books and Records

Paragraph 10(I) of the Indemnity Agreement provides that:

> Until [Plaintiff] shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until [Plaintiff] has been otherwise fully indemnified as hereunder provided, [Plaintiff] shall have the right to free access to the books, records, and accounts of [Defendants] for the purpose of examining and copying them.

(Nunziata Aff. Ex. A ¶ 10(I).)

Courts have enforced similar provisions in indemnity agreements, requiring indemnitors to provide a surety with access to their books and financial records. *See, e.g.*, *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 217 (D. Conn. 2014) (granting specific performance with respect to books and records clause of indemnity agreement because doing so would "merely place the parties in the position they [had] already bound themselves to be contractually" and because "defendants [had] pointed to no harm that they [would] suffer if they [were] forced to comply with [plaintiff's] document request"); *Safeco Ins. Co. of Am. v. M.E.S., Inc.,* 289 F.R.D. 41, 52-53 (E.D.N.Y. 2011*)* (granting plaintiff surety access to documents relating to the books and records of contractor defendants); *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const. Co.*, No. 07-cv-13189, 2009 WL 928848, at *3-4 (E.D. Mich. Mar. 31, 2009) (granting plaintiff access to defendants' books and records where defendants did not dispute that they had signed an indemnity agreement providing for such access); *Hartford Cas. Ins. Co. v. Cal-Tran Assocs.,*

14

*Inc.*, No. 05-cv-5575, 2008 WL 4165483, at *6 (D.N.J. Sept. 4, 2008) (holding that plaintiff surety was entitled to review defendant's books and records because "[p]laintiff's liability under the bond [had] been triggered and continue[d] to be in effect"); *Colonial Sur. Co. v Eastland Constr., Inc.*, 2009 NY Slip Op 31756(U) (N.Y. Sup. Ct. July 30, 2009) (enforcing indemnity agreement provision identical to Paragraph 10(I) of the Indemnity Agreement at issue in this case).

Notwithstanding the unequivocal language of the Indemnity Agreement, Defendants urge the Court to deny Plaintiff's motion on this point. (*See* Defs.' Opp'n 5.) Notably, in opposition, Defendants do not claim—nor could they—that they have made complete production of relevant records in this case. Indeed, it is plain that the documents Defendants have produced in discovery and in conjunction with the Court's January 10, 2014 Consent Order do not encompass the full extent of documentation that Plaintiff is entitled to inspect pursuant to the Indemnity Agreement. Instead, Defendants argue that the Court should deny Plaintiff's request for summary judgment as to this claim because they already produced some documents from their books, records, and accounts during discovery and in conjunction with the Court's January 10, 2014 Consent Order. (*Id.*)

Defendants' obligation under the Indemnity Agreement is a continuing one—it is not extinguished until Plaintiff has been discharged, without loss, from the bonds issued in connection with the Indemnity Agreement or has been fully indemnified for its losses, costs, and expenses. (*See* Nunziata Aff. Ex. A ¶ 10(I).) *See Hartford Cas. Ins. Co.*, 2008 WL 4165483, at *6 (applying New York law and permitting surety to inspect indemnitors' books and records because surety's liability under the bond "continue[d] to be in effect"). No evidence in the record before the Court suggests Plaintiff has been discharged from the bonds issued in

15

connection with the Indemnity Agreement. On the contrary, it is undisputed that Plaintiff is currently a defendant in a state action wherein LandSite seeks to foreclose on the LandSite Lien and recover under the LandSite Lien Bond. (Defs.' 56.1 Statement ¶ 13.) It is also undisputed that Defendants have failed to indemnify and reimburse Plaintiff for its losses, costs, and expenses. (*Id.* ¶ 15.) Accordingly, the Court grants summary judgment against Defendants for specific performance of Plaintiff's continuing right to inspect Defendants' books and other financial records pursuant to Paragraph 10(I) of the Indemnity Agreement.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is hereby granted, in part, and denied, in part. Plaintiff's motion is granted in the amount of $9,939.48 in connection with Defendants' failure to pay premium on the LandSite Lien Bond. Plaintiff's motion is also granted as to its contractual entitlement to collateral security, and Defendants are ordered to deposit with Plaintiff collateral security in the amount of $259,827.96 within a period of ten (10) business days of the entry of this order. Finally, Plaintiff's motion is granted as to Plaintiff's claims for specific performance of its contractual rights to collateral security and free access to Defendants' books, records, and accounts. Defendants are to provide Plaintiff with access to their books, records, and accounts, as provided for in Paragraph 10(I) of the Indemnity Agreement, within a period of ten (10) business days of the entry of this order. Plaintiff's motion is denied as to Plaintiff's request, both under contract and common law, for summary judgment in the amount of $650,025.86, plus interest, to compensate Plaintiff for its losses, costs, and expenses.

16

Dated: Brooklyn, New York　　　　　　　SO ORDERED:
　　　　March 31, 2017
　　　　　　　　　　　　　　　　　　　　　　/s/LDH

　　　　　　　　　　　　　　　　　　　LaSHANN DeARCY HALL
　　　　　　　　　　　　　　　　　　　United States District Judge